**IN THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

Kelsey Hazel Wright,

Plaintiff,

v.

Morton Plant Hospital Association, Inc.,
BayCare Health System, Inc.,

Defendant(s). /

# COMPLAINT

**COMES NOW**, Plaintiff, KELSEY HAZEL WRIGHT, by and through her undersigned counsel, sues the Defendant, BAYCARE HEALTH SYSTEM, LLC and MORTON PLANT HOSPITAL ASSOCIATION, INC., and alleges as follows:

## STATEMENT OF JURISDICTION AND VENUE

1. Plaintiff, KELSEY HAZEL WRIGHT, brings this action to redress unlawful employment practices from Defendants, BAYCARE HEALTH SYSTEM, INC., and MORTON PLANT HOSPITAL ASSOCIATION, INC., based on race, sex, and pregnancy, promoted characteristics under Title VII.

2. This Court has federal question jurisdiction over this action pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1331 because this action arises under Title VII of the Civil Rights Act of 1964.

3. This Court has federal question jurisdiction over this action pursuant to 42 U.S.C. § 12112, the Americans with Disabilities Act.

4. This Court has federal question jurisdiction over this action pursuant to 42 U.S.C. § 2000gg, the Pregnant Workers Fairness Act.

5. This Court has federal question jurisdiction over any and all actions brought under this Complaint by which the cause of action is proscribed by federal statute.

6. This Court has supplemental jurisdiction over the Florida state-law claims pursuant to 28 U.S.C. § 1367, as those claims arise out of the same nucleus of operative facts of the Plaintiff's federal claims.

7. Venue is proper in this district pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b) because the unlawful employment practices complained of herein were committed within this district and because Plaintiff was employed within this district.

8. Plaintiff has satisfied all administrative prerequisites to suit, including timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC" – Charge Number: 511-2025-04655) and receiving a Notice of Right to Sue. Any conditions precedent have been satisfied or waived.

## FACTUAL ALLEGATIONS

9. Plaintiff, KELSEY HAZEL WRIGHT, is an African American female, and all times material hereto was domiciled in the State of Florida.

10. At all times relevant hereto, Plaintiff met the definition of an "employee" under all applicable statutes.

11. At all times material hereto, Defendant, BAYCARE HEALTH SYSTEM, INC., is a corporation organized and existing under the laws of Florida, with a principal place of business at 2985 Drew Street, Clearwater, FL 33759.

12. At all times material hereto, Defendant, MORTON PLANT HOSPITAL ASSOCIATION, INC., is a corporation organized and existing under the laws of Florida, with a principal place of business at 300 Pinellas Street, Clearwater, FL 33756

13. At all times relevant, Defendant(s) have been an employer under the meaning of Title VII.

14. Plaintiff is a current employee of Defendants. Plaintiff began her employment with Defendants on or about January 8th, 2024 at MADONNA PTAK MORTON PLANT REHABILITATION CENTER at 400 Corbett St, Belleair, FL 33756.

15. Plaintiff was initially hired as a Nurse Helper Pool. Soon after, Plaintiff completed licensure for a Certified Nursing Assistant ("CNA") position and Defendants subsequently transferred her to such position on or about May 12th, 2024.

16. As a CNA, Plaintiff was responsible for the care of immobilized and/or incontinent patients, including lifting patients, changing patients, and otherwise assisting nearly or completely immobilized patients with regular tasks during their stay at the Madonna Ptak Morton Plant Rehabilitation Center. Throughout her employment, Plaintiff was qualified for her position and consistently performed her duties with care and without any issue.

17. Despite her qualifications, Plaintiff was repeatedly subjected to disparaging comments, intentionally unjust scheduling practices, unauthorized use of Plaintiff's paid time off benefits, and retaliatory disciplinary action taken against her and placed in her employee file.

18. On or about May 5th, 2025, Plaintiff discovered that she was pregnant.

19. Plaintiff informed Defendants of her pregnancy on or about May 6th, 2025 via a conversation with her supervisor, Tasha Camp. In this conversation Plaintiff asked Tasha

Camp if she would be required to bring in a medical report confirming her pregnancy. Tasha Camp advised her she only would need a doctor's note for work restrictions.

20. Soon thereafter, Plaintiff was asked to work a shift in the downstairs ward. Plaintiff typically worked in the upstairs ward, which contained fewer patients who were entirely immobilized. The number of patients who would require Plaintiff's full physical support during Plaintiff's duties was greater downstairs than it would be upstairs.

21. On or about May 12th, 2025, Plaintiff completed a shift working the downstairs ward and then discussed with her supervisor that she was leaving work with severe lower back pains, radiating pain through her pelvis and legs, and at times experiencing spotting (vaginal bleeding). Plaintiff requested to be moved back upstairs where she would not be required to lift and hold as many immobile and incontinent patients in a single shift.

22. After May 12th, 2025, Plaintiff was continually placed on shifts in the downstairs ward, requiring substantial effort and resulting in continued pain.

23. On or about May 19th, 2025, Plaintiff received her first doctor's note from her obstetrician/gynecologist Michael Allison, M.D., which stated she should refrain from lifting anything greater than forty (40) pounds one time, or lifting anything greater than ten (10) pounds in repetition. This note also suggested Plaintiff refrain from standing uninterrupted for periods of greater than two (2) hours, and/or bending at the waist or squatting repeatedly. This doctor's note was turned over to supervisors that day.

24. On or about May 19th, 2025 Lori McFarland, called Plaintiff for a meeting at or about 10:47a.m. that morning. During this meeting Lori McFarland and a member of Team Resources established that they would not place Plaintiff on "light duty" as other pregnant

employees had, but Plaintiff would continue work as usual and could "call other staff for assistance" if she was required to push, pull, lift, or hold anything over forty (40) pounds.

25. On or about May 22nd, 2025, Ms. Wright was assigned a large set of patients to care for on the first floor for despite Plaintiff's complaints of pain during first floor shifts, her supervisors being made aware of the limitations within the May 19th doctor's note, and her supervisors having already discussed her need for assistance with immobilized patients.

26. During this May 22nd, 2025 shift Plaintiff had to change six (6) of the eleven (11) patients on the first floor without assistance, requiring Plaintiff to go against her doctor's orders of lifting greater than forty (40) pounds. One (1) of these patients required use of a Foley catheter, requiring Plaintiff to go against her doctor's orders of squatting and bending repetitively.

27. On the morning of May 23rd, 2025, Plaintiff reaches out to Lori McFarland, asking why she has been put on sets that require a substantial amount of pushing and pulling. Plaintiff expresses that she has not seen the implementation of the restrictions she and Lori McFarland had discussed. Plaintiff alerts Lori McFarland to the lack of available help on these shifts and questions why her name does not have a light duty restriction next to it on shift sheets. Plaintiff further asks for help from Lori McFarland and other administrators organizing her restrictions so that all supervisors are aware of her restrictions.

28. On or about May 27th, 2025, Plaintiff was ordered to work downstairs once again in order to assist a new trainee. On this shift, Plaintiff was subsequently made to lift, pull, hold, and assist sixteen (16) of the twenty one (21) incontinent patients on the floor, entirely without assistance from the trainee or another staff member. Plaintiff received assistance from other

staff for only two (2) of the twenty one (21) patients. This physically intense work was directly adverse to her doctor's restrictions on her ability to work.

29. During this May 27th, 2025 shift, Plaintiff was kicked in the stomach by a patient she was caring for, and upon alerting her supervisors to the incident no changes were made. Plaintiff was responsible for assisting this patient on multiple occasions after this.

30. Noticing no change in her responsibilities at work, Plaintiff obtained a second doctor's note from her doctor, which more clearly dictated that Plaintiff's restrictions on work were specific examples of her need to be placed on "light duty". Plaintiff turned this note over to her supervisors on or about May 28th, 2025.

31. On or about May 28th, 2025, Plaintiff asks Lori McFarland for the phone number of the Human Resources department. It is documented that Lori McFarland opens this message and does not respond.

32. On or about May 28th, 2025, Tasha Camp notifies Plaintiff that Plaintiff cannot work until "Employee Health" has provided clearance to her supervisors. Plaintiff requests the Employee Health number from Tasha Camp. Tasha Camp does not provide the number to Plaintiff but assures her that Employee Health will reach out on their own. Employee Health does not reach out.

33. On or about May 30th, 2025, Plaintiff signs health documents for Employee Health, and obtains a new doctor's note, which is identical to a doctor's note turned in by another CNA who had no issue with her prenatal care being accommodated.

34. On or about May 31st, 2025, Plaintiff reaches out to Joanne McLaughlin to request the use of her Paid Time Off until a supervisor or administrator approves her return to work.

35. On or about May 31st, 2025, Plaintiff is cleared to return to work, but is placed again on her supervisor's restrictions, not her doctor's orders.

36. On or about June 4th, 2025, Plaintiff again requests use of her Paid Time Off for the shifts she was forced to miss while waiting for approval from Employee Health and Lori McFarland.

37. On or about June 6th, 2025, Plaintiff is allowed to return to work. Prior to her return, Lori McFarland emails Plaintiff a document entitled "Kelsey Wright Light Duty Assignments". This document and the responsibilities listed on it are entirely unique to Plaintiff's pregnancy. Plaintiff has never observed a similar light duty list given to another CNA, pregnant, or otherwise. Theresea Felicione told Plaintiff that this new list was required under a new policy for pregnant employees which began in November of 2024. Plaintiff has never witnessed any pregnant CNA be assigned a similar list any time after November of 2024.

38. On or about July 11th, 2025, Tasha Camp emails Plaintiff, asserting that because she has placed another Paid Time Off request due to the number of shifts she has been asked to miss, or has had to miss due to pregnancy, the Defendants have elected to move Plaintiff to a pro re nata (as needed) employment position, substantially eliminating her benefits and her earnings.

39. At some point prior to July 17th, 2025, Defendants told Plaintiff that her light duty status could not be placed on the staff sheet for each shift due to privacy reasons. On or about July 17th, 2025, Plaintiff discovered other pregnant employees were denoted as light duty on the staff sheet.

40. On or about July 23rd, 2025, Plaintiff files paperwork explaining she does not want to be on pro re nata employment, and that she only meant to use her Paid Time Off for the days she had already missed, and so that she would not have to work double shifts on weekends.

41. On or about July 25th, 2025, Plaintiff delivered a written letter to Theresa Felicione. This letter contained documentation of the discrimination Plaintiff had been victim to since disclosing her pregnancy. Theresa Felicione left Plaintiff a responsive voicemail, requesting to set a meeting for July 29th, 2025.

42. On or about July 27th, 2025, Plaintiff's shift supervisor informed Plaintiff she has violated Defendant's dress code by wearing a hoodie on an overnight shift. Plaintiff addresses the issue directly.

43. On or about July 28th, 2025, Tasha Camp emails Plaintiff, reprimanding her for wearing a hoodie during her shift. Plaintiff regularly observed other CNAs wearing hoodies on overnight shifts. Plaintiff has not observed any other CNA be reprimanded for wearing hooded sweatshirts, whereas Plaintiff is reprimanded multiple times concerning the same incident.

44. On or about July 29th, 2025, Plaintiff attended a meeting with Theresea Felicione and Tanya Caffey to discuss the discrimination she has been experiencing. During this meeting, Plaintiff attempted to show documentation of the effective discrimination against her but was denied the opportunity. The meeting instead focused on Plaintiff's responsibility for an incident unrelated to Plaintiff's duties and responsibilities, wherein Defendants had already determined that no corrective action needed to be taken in relation to this incident.

45. On or about August 1st, 2025, Theresa Felicione sends Plaintiff an email notifying her that one of her supervisors has placed corrective action against her for the incident which

occurred on July 13th, 2025. Plaintiff has confirmed that neither of the CNAs working the shift were given a write up, and Plaintiffs write up was not mentioned nor delivered until immediately after her meeting concerning discrimination.

46. On or about August 25th, 2025, Plaintiff notified supervisors when turning in her "Kelsey Duties" list that she had been kicked in the stomach by an aggressive patient, no action was taken by Defendants to rectify this issue, and Plaintiff was mandated to continue to treat this patient thereafter.

47. On or about October 14th, 2025, and multiple times thereafter, Plaintiff was notified her shift was cancelled and asked by Joanne McLaughlin if she would like to use her paid time off for the cancelled shifts. This cycle repeats through October and November, requiring Plaintiff to use her paid time off for scheduled shifts.

48. On or about November 16th, 2025, Plaintiff asks why she keeps getting her shifts cancelled and is forced to use her paid time off as she is about to enter maternity leave. Plaintiff again asserts she does not want to use her paid time off for these shifts but explains that her maternity leave starts the following day. In this exchange, Joanne McLaughlin explains she has repeatedly used Plaintiff's paid time off benefits without her knowledge or acquiescence to cover shifts that Defendants cancelled without explanation.

49. As a direct and proximate result of the Defendants' conduct, Plaintiff suffered physical injury, lost wages, lost benefits, emotional distress, mental anguish, humiliation, and other compensatory damages.

## COUNT I – TITLE VII SEX DISCRIMINATION (PREGNANCY DISCRIMINATION)

**(Against BAYCARE HEALTH SYSTEM, INC., and MORTON PLANT HOSPITAL ASSOCIATION, INC.)**

50. Plaintiff hereby incorporates by reference Paragraphs 1 through 46 as if fully set forth herein.

51. Plaintiff, as a pregnant female in the workplace is a member of a class of citizens protected by Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act.

52. Defendants were aware of Plaintiff's pregnancy.

53. At all relevant times, Plaintiff performed the functions of her job competently and was qualified for her position with Defendants.

54. Defendants discriminated against Plaintiff because of her sex and pregnancy, in violation of Title VII, through adverse employment actions carried out by her supervisors, including but not limited to:

A) Defendants denied reasonable accommodations to Plaintiff, jeopardizing her health. Defendants knew of Plaintiff's restrictions and ignored them repeatedly.

B) Defendants repeatedly cancelled Plaintiff's shifts and used her paid time off benefits in place of those scheduled shifts without Plaintiff's knowledge, materially limiting her enjoyment of benefits.

C) Defendants, upon eliminating many of Plaintiff's shifts, limited Plaintiff's hours, and placed her on pro re nata employment, materially changing the benefits associated with her employment and substantially limiting her earnings.

55. Plaintiff was treated less favorably than similarly situated employees who were not pregnant.

56. Defendants' supervisors repeatedly ignored the recommendations of Plaintiff's obstetrician and gynecologist Michael Allison, M.D., and continuously forced Plaintiff to provide repetitive and redundant medial paperwork, despite such ignorance to her condition.

57. During Plaintiff's pregnancy, Defendants unfairly manipulated Plaintiff's work schedule through sudden hour cuts, requests not to come in for scheduled shifts, and scheduling shifts on periods when Plaintiff had been known to be unable to work. Upon defendant's

58. The effect of the practices described above has been to deprive Plaintiff of equal employment opportunities, and to otherwise adversely affect her status as an employee because of her sex and pregnancy.

59. Defendants are liable for the acts and omissions of its agents and employees.

60. The sex – and pregnancy – related employment practices and other acts or omissions of Defendants and their agents, supervisors, and employees reflect Defendants' reckless, willful, and wanton indifference or hostility to Plaintiff's protected employment rights and status, directly and proximately resulting in such damages as may be proven at trial, including but not limited to lost income and benefits; psychological, emotional, and mental anguish; distress, humiliation, embarrassment, and degradation; pain and suffering; and Plaintiff's attorney's fees in bringing this action.

**COUNT II – TITLE VII RACIAL DISCRIMINATION (DISPARATE TREATMENT)**

**(Against BAYCARE HEALTH SYSTEM, INC., and MORTON PLANT HOSPITAL ASSOCIATION, INC.)**

61. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

62. Plaintiff is an African American individual and is a member of a protected class under Title VII of the Civil Rights Act of 1964.

63. At all times material, Plaintiff was qualified for her position.

64. Plaintiff was treated less favorably than similarly situated employees outside her protected class, including pregnant employees who were not African American and were not subjected to the degradation, loss of benefits, and pain and suffering inflicted on Plaintiff.

65. Defendants' supervisors repeatedly ignored the recommendations of Plaintiff's obstetrician and gynecologist Michael Allison, M.D., and continuously forced Plaintiff to provide repetitive and redundant medial paperwork, despite such ignorance to her condition. Plaintiff has not observed Defendants refuse light duty to any non-African American employees during their pregnancies.

66. During Plaintiff's pregnancy, Defendants unfairly manipulated Plaintiff's work schedule through sudden hour cuts, requests not to come in for scheduled shifts, and scheduling shifts on periods when Plaintiff had been known to be unable to work. Plaintiff did not observe these arduous requirements during any non-African American employee's pregnancies.

67. Defendants asserted that Plaintiff could surely find work elsewhere, even suggesting that she should apply for other jobs rather than stay employed with Defendants.

68. Defendants improperly deprived Plaintiff of benefits of her employment by using Plaintiff's paid time off benefits without her request or authorization.

69. Defendants singled out Plaintiff among past and current pregnant employees by creating a unique, mandated list of responsibilities for Plaintiff to complete each shift with her supervisor's approval and signature to be recorded at the end of each shift. This list of

responsibilities was entitled "Kelsey's Duties". No other pregnant employee was made to perform such a list of duties prior to, during, or after Plaintiff's pregnancy.

70. Defendants singled out Plaintiff among current employees by repeatedly commenting on her wearing hoodies at work, notifying her that she may no longer wear such dress, while other employees wearing the same dress were never reprimanded or asked to change course.

71. The effect of the practices described above has been to deprive Plaintiff of equal employment opportunities, and to otherwise adversely affect her status as an employee because of her race.

72. Defendants are liable for the acts and omissions of its agents and employees.

73. The race related employment practices and other acts or omissions of Defendants and their agents, supervisors, and employees reflect Defendants' reckless, willful, and wanton indifference or hostility to Plaintiff's protected employment rights and status, directly and proximately resulting in such damages as may be proven at trial, including but not limited to lost income and benefits; psychological, emotional, and mental anguish; distress, humiliation, embarrassment, and degradation; pain and suffering; and Plaintiff's attorney's fees in bringing this action.

**COUNT III – TITLE VII RETALIATION**

**(Against BAYCARE HEALTH SYSTEM, INC., and MORTON PLANT HOSPITAL ASSOCIATION, INC.)**

74. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

75. Defendants retaliated against Plaintiff in violation of Title VII and the Pregnancy Discrimination Act.

76. Plaintiff engaged in protected conduct within the meaning of Title VII and the PDA on and after May 12th, 2025, by opposing what she reasonably believed were unlawful discriminatory and retaliatory employment practices based on her sex, pregnancy, and protected conduct.

77. Plaintiff's protected conduct included; repeated requests for accommodations to work responsibilities based on pregnancy, requesting the contact for Human Resources at her place of employment, meeting with supervisors concerning discrimination in the workplace, delivering a letter to supervisors complaining of repeated and unchanging discrimination, and cooperating with an internal investigation of alleged discriminatory practices.

78. Defendants were aware of Plaintiff's protected conduct, as Defendants' agents and supervisors were the recipients of Plaintiff's requests for accommodations, allegations of discrimination, Human Resources requests, and were the parties responsible for responding to such requests and complaints.

79. Defendants actively discouraged Plaintiff from engaging in protected conduct by repeatedly ignoring her requests for accommodations of work responsibilities, disallowing contact between Plaintiff and Employee Health, requiring redundant documentation before eventual implementation of work accommodations, manipulating Plaintiff's work schedule, disallowing contact between Plaintiff and Human Resources, and more.

80. In response to Plaintiff's protected conduct, Defendants retaliated against her through adverse employment actions carried out by its managers and supervisors, including but not limited to, Tonya Caffey, Tasha Camp, Lori McFarland, Theresa Felicione, and Anjanette Dickey.

81. Defendants' retaliatory adverse employment actions against Plaintiff were clear and immediate. One day after Plaintiff's July 29th meeting concerning Defendant's discriminatory conduct, Plaintiff was suddenly written up for a July 13th incident which Defendants had already described as "no fault" and had declared it would not require disciplinary action. Plaintiff had worked a number of shifts since the date of the incident and was provided no notice of any disciplinary action taken, until immediately after her meeting concerning discrimination. Plaintiff has confirmed no other staff present during the July 13th incident was blamed or written up, despite Plaintiff being the only member of said staff who was on light duty at the time of the incident. Plaintiff has not observed a multiple week waiting period for any disciplinary action taken before or after Plaintiff received notice of corrective action against her.

82. Additionally, Defendants retaliated against Plaintiff by repeatedly manipulating her work schedule. Defendants, on multiple occasions, asked Plaintiff not to come in to work a scheduled shift, and upon her absence would then list her absence as a "call off" or use Plaintiff's paid time off for a shift without Plaintiff's knowledge or consent.

83. The effect of the adverse actions has been to deprive Plaintiff of equal employment opportunities, and otherwise adversely affect her status as an employee, because she engaged in protected conduct.

84. Defendants are liable for the acts and omissions of its agents and employees.

85. The retaliatory employment practices and other acts or omissions of Defendants and their agents, supervisors, and employees reflect Defendant's reckless, willful, and wanton indifference or hostility to Plaintiff's protected employment rights and status, directly and proximately resulting in such damages as may be proven at trial, including but not limited to

lost income and benefits; lost employment opportunities; psychological, emotional, and mental anguish; distress, humiliation, embarrassment, and degradation; pain and suffering; and Plaintiff's attorney's fees in bringing this action.

**COUNT IV – PREGNANT WORKERS FAIRNESS ACT**

**(Against BAYCARE HEALTH SYSTEM, INC., and MORTON PLANT HOSPITAL ASSOCIATION, INC.)**

86. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

87. Defendants have violated the Pregnant Workers Fairness Act 42 U.S.C. 2000 by refusing to provide reasonable accommodations to Plaintiff's known limitations related to her pregnancy.

88. None of the requests that Plaintiff made caused Defendant any undue hardship, and thus all should have been accommodated under the Act.

89. Specifically, Defendants refused to make reasonable accommodations to Plaintiff's requests for an altered schedule, refused to make accommodations to Plaintiff's physical responsibilities on the job, required Plaintiff to take leave and as a result forced her to use her employment benefits without her knowledge or consent, and took adverse action in terms of the privileges of Plaintiff's employment in relation to her pregnancy.

90. The effect of the adverse actions has been to deprive Plaintiff of equal employment opportunities, and otherwise adversely affect her status as an employee, because she engaged in protected conduct.

91. Defendants are liable for the acts and omissions of its agents and employees.

92. The retaliatory employment practices and other acts or omissions of Defendants and their agents, supervisors, and employees reflect Defendant's reckless, willful, and wanton indifference or hostility to Plaintiff's protected employment rights and status, directly and proximately resulting in such damages as may be proven at trial, including but not limited to lost income and benefits; lost employment opportunities; psychological, emotional, and mental anguish; distress, humiliation, embarrassment, and degradation; pain and suffering; and Plaintiff's attorney's fees in bringing this action.

## <u>COUNT V – AMERICANS WITH DISABILITIES ACT</u>

**(Against BAYCARE HEALTH SYSTEM, INC., and MORTON PLANT HOSPITAL ASSOCIATION, INC.)**

93. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

94. Defendants have committed unlawful discrimination in employment under 42 U.S.C. § 12112, by refusing reasonable accommodations including Plaintiff's modified schedule, provided seating, and the light duty responsibilities requested by her healthcare provider.

95. The effect of the adverse actions has been to deprive Plaintiff of equal employment opportunities, and otherwise adversely affect her status as an employee, because she engaged in protected conduct.

96. Defendants are liable for the acts and omissions of its agents and employees.

97. The retaliatory employment practices and other acts or omissions of Defendants and their agents, supervisors, and employees reflect Defendant's reckless, willful, and wanton indifference or hostility to Plaintiff's protected employment rights and status, directly and proximately resulting in such damages as may be proven at trial, including but not limited to

lost income and benefits; lost employment opportunities; psychological, emotional, and mental anguish; distress, humiliation, embarrassment, and degradation; pain and suffering; and Plaintiff's attorney's fees in bringing this action.

**COUNT VI – FLORIDA CIVIL RIGHTS ACT PREGNANCY DISCRIMINATION**

**(Against BAYCARE HEALTH SYSTEM, INC., and MORTON PLANT HOSPITAL ASSOCIATION, INC.)**

98. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

99. Defendants have committed unlawful employment practices under Fla. Stat. § 760.10, giving rise to a cause of action under Fla. Stat. § 760.07.

100. Defendants discriminated against Plaintiff on the basis of her sex and pregnancy, and materially limited her enjoyment of employment benefits, and adversely affected her status as an employee.

101. The effect of the adverse actions has been to deprive Plaintiff of equal employment opportunities, and otherwise adversely affect her status as an employee, because she engaged in protected conduct.

102. Defendants are liable for the acts and omissions of its agents and employees.

103. The retaliatory employment practices and other acts or omissions of Defendants and their agents, supervisors, and employees reflect Defendant's reckless, willful, and wanton indifference or hostility to Plaintiff's protected employment rights and status, directly and proximately resulting in such damages as may be proven at trial, including but not limited to lost income and benefits; lost employment opportunities; psychological, emotional,

and mental anguish; distress, humiliation, embarrassment, and degradation; pain and suffering; and Plaintiff's attorney's fees in bringing this action.

## JURY DEMAND

**Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein which are so triable.**

Dated October 16, 2026.

/s/*Bruce Burk*
Bruce Burk, Esq.
Burk Law Firm, PLLC
100 2nd Ave N, Ste 300
Saint Petersburg, FL 33701
813-591-0070
bburk@burkfirm.com
paralegal@burkfirm.com